# In the United States Court of Federal Claims

No. 09-371T

(Filed: December 11, 2013)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| REORGANIZED RFS CORPORATION & SUBSIDIARIES, | |
| Plaintiff, | Tax Refund Suit; Property and Casualty Insurance Companies; Special Estimated Tax Payments; 26 U.S.C. § 847; Effect of Bankruptcy Proceedings; Collateral Estoppel. |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Kim Marie Boylan*, with whom were *David Dreier* and *Nicholas Gard*, White & Case LLP, Washington, D.C., for Plaintiff.

*Cory A. Johnson*, with whom were *Kathryn Keneally*, Assistant Attorney General, *Mary M. Abate*, Assistant Chief, and *Carl D. Wasserman*, Trial Attorney, U.S. Department of Justice, Tax Division, Court of Federal Claims Section, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

This tax refund case is before the Court on the parties' cross-motions for summary judgment. The dispute concerns the application of a little-known provision of the Internal Revenue Code ("IRC"), 26 U.S.C. § 847, applicable to property and casualty insurance companies at their election. In 1988, Congress adopted this provision at the behest of the insurance industry to establish a mechanism for making "special estimated tax payments" ("SETPs"), and allowing corresponding tax deductions. Through IRC §§ 846 and 847, Congress intended to address an insurance company's discounting of claims recognized in one year, but not paid until a later year. See Ernst & Young LLP, Federal Income Taxation of Property and Casualty Insurance Companies § 3.4[3][j] (1996). The workings of IRC §§ 846 and 847 are extremely complex.

The question presented is whether Plaintiff Reorganized RFS Corporation and Subsidiaries ("RFS"), for itself and as substitute agent for Reliance Group Holdings, Inc. and Subsidiaries ("RGH"), is entitled to $37,545,818 in refunds for overpayment of federal income taxes for tax years 2004 through 2006. The refunds Plaintiff seeks are for the SETPs that it claims to have made pursuant to IRC § 847 in tax years 1988 through 1991. However, because Plaintiff did not list any SETPs on its original tax returns, that claim is based on the amended returns it filed in 2003, when it designated those payments as SETPs for the first time. Thus, despite the intricacies of the relevant IRC sections, the issue simply is whether, based on its amended tax returns, Plaintiff did in fact make any SETPs for the years 1988 to 1991. If it did, then it may seek a refund of such payments, but if it did not, then there are no payments to refund.

The parties agree that, from 1988 to 1991, RGH did not take any § 847 deductions and did not designate any payments as SETPs. At the time, RGH's tax director made a deliberate decision not to take any § 847 deductions. Later, as a result of bankruptcy proceedings in the Southern District of New York, the creditors of RGH decided that RGH could have asserted § 847 deductions from 1988 to 1991, and RGH therefore filed amended tax returns in 2003 to assert those deductions. Although the creditors obtained a favorable ruling from the Bankruptcy Court on September 27, 2004 adopting their position on the § 847 deductions, the Internal Revenue Service ("IRS") did not agree with the Bankruptcy Court, and did not grant Plaintiff any tax refunds.

Plaintiff thereupon filed suit in this Court on June 8, 2009 seeking the tax refunds.[1] After a period for discovery, Plaintiff filed a motion for partial summary judgment on May 28, 2013, and Defendant filed a cross-motion for summary judgment on July 26, 2013. Following the filing of the parties' response and reply briefs, the Court heard oral argument on November 5, 2013. The cross-motions for summary judgment are based upon extensive stipulations of fact and attachments, for which the Court commends counsel of record.

Having carefully considered the parties' arguments and the applicable law, the Court concludes that the plain language of § 847 requires SETPs to be made by the deadline for filing original tax returns, and does not permit them to be made as a matter of right by amended returns filed over a decade later. Based upon the facts in the record, Plaintiff did not make any SETPs from 1988 to 1991, and therefore is not entitled to any refunds of such payments. Accordingly, for the reasons explained below, Plaintiff's motion is denied, and the Government's cross-motion is granted.

---

[1] This case originally was assigned to Judge Lawrence M. Baskir of this Court. Chief Judge Emily C. Hewitt reassigned this case to Judge Thomas C. Wheeler on October 11, 2012. See RCFC 40.1(c).

Background

At the heart of this case is IRC § 847, a statute that allows insurance companies to take an optional tax deduction, provided that they also make a corresponding special estimated tax payment. If these SETPs are "not used to offset additional tax due for any of the first 15 taxable years beginning after the year for which the payment was made," then they become refundable in the sixteenth year. § 847(2). This dispute is over a claim for refunds of such unused SETPs; specifically, RFS's claim for refunds for the 2004 through 2006 tax years based on SETPs that RGH purportedly made in the 1988 through 1991 tax years. Whether RFS is entitled to these refunds requires an examination of its relevant corporate history, including its previous tax filings, and the meaning of the governing statute, IRC § 847.

The relevant history begins in 1988. At that time, and until the resolution of its bankruptcy proceedings on April 22, 2005, RGH was the parent corporation of a consolidated tax group that owned all of the stock of Reliance Financial Services Corporation ("RFSC"), which, in turn, owned all of the stock of Reliance Insurance Company ("RIC"). Pl.'s Proposed Findings of Fact ¶¶ 2, 4 ("PPF"). As a property and casualty insurer, RIC was required under IRC § 846 to discount its incurred but unpaid losses when claiming them as a current tax deduction. PPF ¶¶ 5-6. Since the enactment of § 847 in 1988, RIC has also had the option of taking a "special deduction" up to the amount of that discount, but only if equivalent SETPs are timely made. See § 847(1)-(2). From 1988 through 1991, RGH filed consolidated tax returns that included Forms 1120-PC for its insurance subsidiaries, including RIC. Stip. ¶¶ 2, 7, 12, 16. During this period, RGH did not claim any § 847 deductions or list any SETPs on its originally filed returns. Stip. ¶¶ 3, 8, 13, 17.

On June 12, 2001, RGH and RFSC filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the U.S. Bankruptcy Court for the Southern District of New York. Stip. ¶ 49. On April 22, 2005, RFSC emerged from bankruptcy, changed its name to RFS and, along with its subsidiaries, including RIC, deconsolidated from RGH. PPF ¶¶ 2-4, 32. On November 30, 2005, RGH emerged from bankruptcy and liquidated after designating RFS to act as its substitute agent with respect to all federal income tax matters for all years. Pl.'s Mem. 7 (May 28, 2013).

On April 7, 2003, during the pendency of the bankruptcy proceedings, RGH submitted amended income tax returns, including for years 1988 through 1991. Stip. ¶¶ 4-5, 9-10, 14-15, 18-19; SX-2. Those amended returns marked Plaintiff's first attempt to claim the § 847 deduction for the relevant time period. See, e.g., SX-2 at S0056-65. In explaining the changes from its original tax returns, RGH wrote, "Since section 847 is not intended to change the timing or the amount of taxes paid or refunded in the taxable

3

year, *existing taxes paid are simply recategorized as special estimated tax payments.*" SX-2 at S0056 (emphasis added).

Then, on August 2, 2004, the Official Unsecured Creditors' Committee and the Official Unsecured Bank Committee filed a motion with the bankruptcy court pursuant to 11 U.S.C. § 505(a)(1) (the "505 Motion"). Stip. ¶ 53; SX-40. In the 505 Motion, the creditor committees sought, among other things, a declaratory judgment that "RGH was not required to designate on an originally-filed tax return any estimated tax payments as 'special estimated tax payments' under Section 847 of the Tax Code in order for such payments to be treated as special estimated tax payments refundable pursuant to Section 847 of the Tax Code." Stip. ¶ 53; SX-40 ¶¶ 14(d), 35-43. The IRS was served with the 505 Motion and with notice of the hearing on the motion. SX-41 to -42. However, the IRS was not a party to the proceeding and did not attend or participate in the hearing. Pl.'s Resp. 7, 9-10, 24 (Aug. 21, 2013). At the close of the hearing, the bankruptcy court granted the declaratory relief requested "based upon the pleading as filed and no opposition having been interposed." DX-4 at 159.

Plaintiff's subsequent claims for refunds of its purported SETPs relied on its theory expressed in the amended tax returns and approved by the bankruptcy court's declaratory judgment: that payments originally designated as regular estimated tax payments from 1988 through 1991 could be "recategorized" as SETPs in 2003. Thus, when RGH filed its 2004 and 2005 tax returns, it requested refunds of approximately $6.7 million and $4.9 million, respectively, in unused SETPs. DX-2 at 27. When RFS filed its 2005[2] and 2006 tax returns, it likewise requested refunds of approximately $11 million and $15 million, respectively. DX-2 at 27. The IRS, however, never accepted the amended returns, and determined that RGH and RFS were not entitled to the refunds they sought because they had failed to make SETPs in accordance with the requirements prescribed by the governing statute. DX-2 at 33.

That statute, § 847, allows "a deduction for the taxable year, if special estimated tax payments are made as required by paragraph (2)":

> **(2) Special estimated tax payments.**—The deduction under paragraph (1) shall be allowed only to the extent that such deduction would result in a tax benefit for the taxable year for which such deduction is allowed or any carryback year and only to the extent that special estimated tax payments are

---

[2] The bankruptcy proceedings culminated in 2005 with the deconsolidation of the RGH tax group, the liquidation of RGH, and the emergence of RFS. Consequently, RGH and RFS each filed 2005 tax returns for the short tax years covering their respective periods of existence. See PPF ¶¶ 32-36.

> made in an amount equal to the tax benefit attributable to such deduction *on or before the due date (determined without regard to extensions) for filing the return for the taxable year for which the deduction is allowed.*  If a deduction would be allowed but for the fact that special estimated tax payments were not timely made, such deduction shall be allowed to the extent such payments are made within a reasonable time, as determined by the Secretary, if all interest and penalties, computed as if this sentence did not apply, are paid. . . .
>
> **(3) Special loss discount account.**—Each company which is allowed a deduction under paragraph (1) shall, for purposes of this part, establish and maintain a special loss discount account.

§ 847 (emphasis added).

Plaintiff's suit asserts refund claims for tax years 2004 through 2006 based on the purported § 847 deductions taken and SETPs made in years 1988 through 1991. Compl. ¶¶ 41, 47, 53, 59. Plaintiff's claims are founded on the argument that it has an "unfettered right" to file amended returns that recategorize previously made regular estimated tax payments as SETPs, because § 847 "does not define what it means to 'make' a 'special estimated tax payment.'" Pl.'s Mem. 22-23.

## Analysis

A. Standard for Decision

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. RCFC 56(a); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A fact is material if, according to the governing substantive law, it "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if, based on the evidentiary record, it "may reasonably be resolved in favor of either party." Id. at 250.

The burden of showing an absence of genuine issues of material fact lies with the party moving for summary judgment. Dairyland Power Co-op. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Where, however, the nonmovant bears the burden of proof at trial, the movant can meet

its burden simply by showing "an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 325). In a tax refund suit, the plaintiff bears the burden of proving entitlement to a refund by a preponderance of the evidence. Sara Lee Corp. & Subsidiaries v. United States, 29 Fed. Cl. 330, 334 (1993).

     B. Collateral Estoppel

The application of collateral estoppel precludes a party from relitigating an issue when "(i) the issue previously adjudicated is identical with that now presented, (ii) that issue was actually litigated in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action." Morgan v. Dep't of Energy, 424 F.3d 1271, 1274-75 (Fed. Cir. 2005). RFS argues that collateral estoppel applies here, and therefore prevents the Government from litigating whether RFS made special estimated tax payments for the 1988 through 1991 tax years. Pl.'s Mem. 10-21. Specifically, RFS contends that the U.S. Bankruptcy Court for the Southern District of New York already addressed the issue presented in this case "and found that Plaintiff was *not* required to designate its regular tax payments as special estimated tax payments on originally-filed tax returns in order for those payments to constitute timely made special estimated tax payments refundable pursuant to IRC 847." Pl.'s Mem. 2.

Plaintiff's argument is unavailing for a host of reasons, the most basic of which is that the Government did not appear or litigate any issues at the bankruptcy hearing. See Pl.'s Mem. 17 ("[F]or whatever reason the IRS chose not to object to the 505 Motion, chose not to appear at the hearing, and chose not to appeal the 505 Order."). Although, in some limited circumstances, collateral estoppel can be applied where the parties to the successive actions are not the same, the Federal Circuit has "never applied issue preclusion *against* a non-party to the first action. In fact, the Supreme Court has specifically held that litigants who never appeared in a prior action may not be collaterally estopped without litigating the issue." In re Trans Tex. Holdings Corp., 498 F.3d 1290, 1297 (Fed. Cir. 2007) (alterations and internal quotation marks omitted) (quoting Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 329 (1971)). That holding applies with even greater force here, where the issue was not opposed by any party, let alone the Government. See In re Reliance Grp. Holdings, Inc., No. 01-13404, at 1 (Bankr. S.D.N.Y. Sep. 27, 2004) (noting that "no objections [had] been filed").

    C. <u>Statutory Construction</u>

The remaining question, quite simply, is whether Plaintiff made special estimated tax payments for tax years 1988 through 1991. As explained below, the plain language of the statute and the evidence in the record make clear that the answer is "no."

Statutory construction always begins with the language of the statute itself. <u>Momenta Pharm., Inc. v. Amphastar Pharm., Inc.</u>, 686 F.3d 1348, 1353 (Fed. Cir. 2012) (quoting <u>Barnhart v. Sigmon Coal Co.</u>, 534 U.S. 438, 450 (2002)), *cert. denied*, 133 S. Ct. 2854 (2013). If "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," then the inquiry stops there. <u>Id.</u> at 1354 (quoting <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 340 (1997)). In determining whether a statute is clear or ambiguous, its text is not viewed in isolation, but "by reference to . . . the specific context in which the language is used[] and the broader context of the statute as a whole." <u>Id.</u> (quoting <u>Robinson</u>, 519 U.S. at 340) (internal quotation marks omitted).

In this case, the statute explicitly allows an additional deduction for the taxable year only "if special estimated tax payments are made as required by paragraph (2)." § 847(1). Paragraph (2) clearly provides that such SETPs must be made "on or before the due date (determined without regard to extensions) for filing the return for the taxable year for which the deduction is allowed." § 847(2). An exception to this timeliness requirement is permitted only when "payments are made within a reasonable time, as determined by the Secretary, if all interest and penalties, computed as if this sentence did not apply, are paid." <u>Id.</u> Finally, the statute requires that "[e]ach company which is allowed a deduction under paragraph (1) shall, for purposes of this part, establish and maintain a special loss discount account." § 847(3). In sum, under § 847, a company must make SETPs by the unextended due date for filing its tax returns, must make such payments in connection with a corresponding deduction, and must establish and maintain a corresponding special loss discount account.

The relevant facts are not in dispute, and they reveal that Plaintiff fulfilled none of these requirements. On its original tax returns for years 1988 through 1991, RGH did not take any § 847 deductions or designate any payments as SETPs, nor did it establish or maintain a special loss discount account. In fact, Plaintiff did not even attempt to claim § 847 deductions for the relevant years until the filing of its amended tax returns over a decade later. Given these facts, it is impossible to conclude that SETPs were ever made, and absent such payments, there can be no excess payments to refund. Plaintiff's claims are denied.

## Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED. Accordingly, Plaintiff's complaint is DISMISSED with prejudice. No costs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge
